UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

CERAMICAS INDUSTRIALES, S.A. and        :
BRIGGS PLUMBING PRODUCTS, INC.,

                                        :

                    Plaintiffs,

                                        :        08 Civ. 5114 (BSJ)

          v.

                                        :        ECF Case

METROPOLITAN LIFE INSURANCE
COMPANY,                                 :

                    Defendant.           :

-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

SPEARS & IMES LLP
51 Madison Avenue
New York, NY 10010
Tel.: (212) 213-6996

Charlita Mays
Sarah Paul
Sarah Shudofsky

*Attorneys for Metropolitan Life
Insurance Company*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................iii

PRELIMINARY STATEMENT ..............................................................1

FACTS..................................................................................................3

   A.   The Relevant Parties and the Five Manufacturing Sites...........................3

   B.   The Share Purchase Agreement..............................................................4

   C.   The Filing of Plaintiffs' Complaint Against MetLife................................5

      1.   The Indemnification Claim.............................................................5

      2.   The CERCLA Claims....................................................................6

ARGUMENT.........................................................................................7

THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY ...7

    I.   Standard of Review ...................................................................7

    II.   Plaintiffs' Indemnification Claim Should Be Dismissed .................8

      A.   Plaintiffs' Indemnification Claim Is Time-Barred .....................8

        1.   New York Law Bars Plaintiffs' Claim ..................................9

        2.   The Federally Required Commencement Date Does Not Apply ..........10

      B.   In the Alternative, Plaintiffs' Indemnification Claim
          Is Time-Barred As to the Robinson, Flora, and Knoxville Sites..............14

    III.   Plaintiffs' CERCLA Claims Should Be Dismissed....................16

      A.   Plaintiffs Are Not Eligible to Assert a Section 113 Claim........................17

      B.   Plaintiffs' Section 107 Claim Fails on Multiple Grounds .........................18

        1.   Plaintiffs Have Not Stated a Claim Premised
          on Derivative or Direct Liability ...........................................18

i

a.    Derivative Liability..........................................................................18

(i).    The Applicable Legal Framework ................................................19

(ii).    Plaintiffs Do Not Allege Any Fact That Could
Support a Claim of Domination by MetLife ................................21

(iii).    Plaintiffs Do Not Allege Any Facts That Could
Support a Claim That MetLife Misused the
Corporate Form to Commit a Wrong .........................................23

b.    Direct Liability ...............................................................................24

2.    Plaintiffs' Allegations of Response Costs are Deficient
With Respect to the Abingdon South Plant, the Abingdon
North Plant, the Robinson Site, and the Flora Site.................................27

3.    Plaintiffs' Claim Regarding the Knoxville Site Is Time-Barred ...........30

CONCLUSION ..................................................................................................33

## TABLE OF AUTHORITIES

### Cases

*ABB Indus. Sys., Inc. v. Prime Tech., Inc.,*
    120 F.3d 351 (2d Cir. 1997) ......................................................................................9, 10

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328, 337 (2d Cir. 2006) ...........................................................................8

*Alter v. Bogoricin,*
    No. 97 Civ. 0662 (MBM), 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) ...........................24

*In re Antitrust Currency Conversion Fee Litig.,*
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ....................................................................21, 22

*Ascon Props., Inc. v. Mobil Oil Co.,*
    866 F.2d 1149 (9th Cir. 1989) ..............................................................................28

*Bonner v. Guccione,*
    No. 94 CIV. 7735, 1995 WL 442102 (S.D.N.Y. Mar. 24, 1995) ...................................32

*Booth Oil Site Admin. Group v. Safety-Kleen Corp.,*
    532 F. Supp. 2d 477 (W.D.N.Y. 2007) ...................................................................25

*Bradley Industrial Park v. Xerox Corp.,*
    No. 88 Civ. 7574, 1991 WL 20008 (S.D.N.Y. Feb. 4, 1991) .....................................29, 30

*Chase Manhattan Bank, N.A. v. T&N plc,*
    905 F. Supp. 107 (S.D.N.Y. 1995) .......................................................................12, 13, 14

*City Nat'l Bank of Florida v. Morgan Stanley DW, Inc.,*
    No. 05 Civ. 2739 (DLC)(JCF), 2007 WL 927428 (S.D.N.Y. Mar. 29, 2007) ..................................................................................................................23

*City of New York v. Exxon Corp.,*
    112 B.R. 540 (S.D.N.Y. 1990) .............................................................................23

*City of New York v. New York Cross Harbor R.R. Terminal Corp.,*
    No. 98CV7227, 2006 WL 140555 (E.D.N.Y. Jan. 17, 2006) .....................................25

*City of Waukegan, Illinois v. National Gypsum Co.,*
    _ F. Supp. 2d _, 2008 WL 2278118 (N.D. Ill. Apr. 7, 2008) ....................................26

*Craig v. Bank of New York*,
  169 F. Supp. 2d 202 (S.D.N.Y. 2001) ................................................................................. 9

*Cook v. Rockwell Int'l Corp.*,
  755 F. Supp. 1468 (D. Col. 1991) ...................................................................................... 28

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) .......................................................................................................... 17

*Cordius Trust v. Kummerfeld*,
  No. 99 Civ. 3200 (DLC), 2007 WL 2435156, at *6 (S.D.N.Y. Aug. 29,
  2007)................................................................................................................................ 23-24

*Deby, Inc. v. Cooper Ind.*,
  No. 99C2464, 2000 WL 263985 (N.D. Ill. Feb. 29, 2000) ................................................. 26

*Dolco Inv., Ltd. v. Moonriver Dev., Ltd.*,
  486 F. Supp. 2d 261 (S.D.N.Y. 2007) ............................................................................... 21

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
  228 F.R.D. 508 (S.D.N.Y. 2005) ........................................................................... 19, 21, 24

*Fezzani v. Bear, Stearns & Co., Inc.*,
  384 F. Supp. 2d 618 (S.D.N.Y. 2004) ................................................................................. 8

*Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*,
  No. 4:05-CV-428, 2006 WL 2827168 (E.D. Tex. Sept. 28, 2006) .................................... 28

*Ghartey v. St. John's Queens Hosp.*,
  869 F.2d 160 (2d Cir. 1989) .............................................................................................. 8

*Gussack Realty Co. v. Xerox Corp.*,
  224 F.3d 85 (2d Cir. 2000) ................................................................................................ 27

*Hanley v. Dow Chem. Co.*,
  No. 96CV0483, 1999 WL 33603133 (N.D.N.Y. Mar. 3, 1999) ................................... 12-13

*J.A.O. Acquisition Corp. v. Stavitsky*,
  745 N.Y.S.2d 634, 641 (N.Y. Sup. Ct. 2001) ................................................................. 9-10

*Kalin v. Xanboo, Inc.*,
  526 F. Supp. 2d 392 (S.D.N.Y. 2007) .......................................................................... 21, 22

*Kaplan v. Aspen Knolls Corp.*,
  290 F. Supp. 2d 335 (E.D.N.Y. 2003) ............................................................................... 24

*Key Tronic Corp. v. United States*,
  511 U.S. 809 (1994) .......................................................................................................... 30

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC,*
No. 01 CIV. 2946 (AGS), 2002 WL 432390 (S.D.N.Y. Mar. 20, 2002) ..........................22

*Loomcraft Textile and Supply Co. v. Jay Yang Designs, Ltd.,*
No. 92 Civ. 1757, 1992 WL 249919 (S.D.N.Y. Sept. 22, 1992) ......................................23

*Marsh v. Rosenbloom,*
499 F.3d 165 (2d Cir. 2007) ....................................................................................19, 20

*McGregor v. Indus. Excess Landfill, Inc.,*
856 F.2d 39 (6th Cir. 1988) ............................................................................................28

*New York v. Nat'l Serv. Indus., Inc.,*
460 F.3d 201 (2d Cir. 2006) ......................................................................................19-20

*Pampillonia v. RJR Nabisco, Inc.,*
138 F.3d 459 (2d Cir. 1998) ...........................................................................................22

*Port Auth. of New York & New Jersey v. Allied Corp.,*
914 F. Supp. 960 (S.D.N.Y. 1995) .................................................................................13

*Sahu v. Union Carbide Corp.,*
No. 04 Civ. 8825 (JFK), 2006 WL 3377577 (S.D.N.Y. Nov. 20, 2006) ..........................22

*Schaefer v. Town of Victor,*
457 F.3d 188 (2d Cir. 2006) ...........................................................................17, 31, 32

*Sensient Colors, Inc. v. Kohnstamm,*
548 F. Supp. 2d 681 (D. Minn. 2008) .............................................................................26

*Status Int'l S.A. v. M&D Maritime Ltd.,*
994 F. Supp. 182 (S.D.N.Y. 1998) ..................................................................7-8, 8, 22-23

*Syms v. Olin Corp.,*
408 F.3d 95 (2d Cir. 2005) ........................................................................................31-32

*T&N PLC v. Fred S. James & Co. of New York, Inc.,*
29 F.3d 57 (2d Cir. 1994) .............................................................................................9, 10

*United States v. Atl. Research Corp.,*
127 S.Ct. 2331 (2007). ....................................................................................................17

*United States v. Bestfoods,*
524 U.S. 51 (1998) .........................................................................18, 19, 20, 24, 25, 26

*Wagar v. BASF Corp.,*
No. 88-CV-90, 1990 WL 124069 (N.D.N.Y. Aug. 24, 1990) .........................................12

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
  933 F.2d 131 (2d Cir. 1991) ............................................................................................23

*Zinaman v. USTS New York, Inc.*,
  798 F. Supp. 128 (S.D.N.Y. 1992) ..............................................................................23, 24

## **Statutes**

42 U.S.C. §§ 9601-9675 ......................................................................................6, 11, 12, 14, 27, 31

N.Y. C.P.L.R. 213(2)..............................................................................................9, 10, 11, 14

N.Y. Gen. Constr. Law § 25-b...................................................................................12, 14

Defendant Metropolitan Life Insurance Company ("MetLife") respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The Complaint arises from the sale of Plaintiff Briggs Plumbing Products, Inc. ("Briggs Plumbing"), a company engaged in the manufacture of ceramic bathroom products at several sites, to Plaintiff Ceramicas Industriales, S.A. ("Ceramicas"). The sale took place in August of 1997 – almost eleven years ago. Notably, Plaintiff Briggs Plumbing operated the five manufacturing sites at issue before and after the sale. MetLife was the majority shareholder of Briggs Holdings, Inc. ("Briggs Holdings"), the former owner of Briggs Plumbing. The claims in the Complaint stem from alleged hazardous environmental conditions at the five manufacturing sites operated by Plaintiff Briggs Plumbing. Plaintiffs assert claims against MetLife in connection with these sites for: (1) contractual indemnification; and (2) cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2008). As MetLife demonstrates below, Plaintiffs' Complaint is wholly deficient and should be dismissed in its entirety.

*First*, Plaintiffs' indemnification claim is time-barred on its face. This claim is based upon an allegedly inaccurate contract warranty regarding environmental conditions at five sites run by Plaintiff Briggs Plumbing which the Complaint asserts constitutes a breach of the contract. The alleged inaccurate warranty was made by Plaintiff Briggs Plumbing as well as Briggs Holdings. However, even assuming—as the Court must on a

1

motion to dismiss—that the warranty at issue was inaccurate and therefore constituted a breach of the contract, any breach would have occurred on the date the contract was executed and the warranty was made, which was almost eleven years ago, on August 18, 1997. The contract specifically prohibits Plaintiffs from seeking indemnification for such a breach more than sixty days after the statute of limitations for the alleged breach has expired. Since the statute of limitations in this instance is six years, any claim for indemnification would have to have been made no later than October 17, 2003, *i.e.*, six years and sixty days after August 18, 1997.

*Second*, Plaintiffs' CERCLA allegations do not satisfy even the liberal pleading standard of Rule 12(b)(6). Plaintiffs fail to state a claim under section 113 of CERCLA because relief under that section is only available to parties who – unlike Plaintiffs – have either been sued under CERCLA or settled their liability with the government. Plaintiffs also fail to state a claim under section 107 of CERCLA. In order to state a section 107 claim against MetLife, a parent corporation, for environmental conditions at manufacturing sites owned by its subsidiary, federal law requires Plaintiffs to allege (i) facts that support piercing the corporate veil; and/or (ii) facts that demonstrate that MetLife was an active operator of the sites in question. Regarding the former, there are no allegations in the Complaint that MetLife exercised domination or control over Briggs Holdings or Briggs Plumbing or that it misused the corporate form to commit a wrong. Moreover, there are no allegations in the Complaint that MetLife played any kind of role in managing, directing, or conducting operations at any of the five manufacturing sites that are the subject of the Complaint, much less that MetLife was involved in any

2

operations relating to hazardous environmental conditions at those sites. The absence of such allegations is fatal to Plaintiffs' section 107 CERCLA claims.

In addition, for four out of the five manufacturing sites at issue in the Complaint, Plaintiffs have also failed to allege that they incurred cognizable response costs, which is an essential element of a section 107 claim. And finally, for the fifth site at issue, Plaintiffs have alleged no facts that could bring their section 107 claim within CERCLA's statute of limitations.

Because Plaintiffs have failed to state a claim against MetLife with respect to either their contractual indemnification claim or their CERCLA claims, the Complaint should be dismissed.

## FACTS

### A.    The Relevant Parties and the Five Manufacturing Sites

Plaintiff Briggs Plumbing, a Michigan corporation, is engaged in the manufacture of ceramic bathroom products. (Compl. ¶ 11.) In 1997, Plaintiff Ceramicas, a Chilean company, purchased Briggs Plumbing from Briggs Holdings, a Delaware corporation. (*See* Share Purchase Agreement, attached as Exh. 1 to the Compl., pmbl.) At that time, Defendant MetLife, a New York corporation, owned a majority of the issued and outstanding stock of Briggs Holdings. (*Id.*)

Plaintiffs allege that in 1997, Briggs Plumbing owned properties in Illinois, Indiana, Tennessee, and Pennsylvania, "on which Briggs Plumbing or its predecessor companies maintained manufacturing facilities." (Compl. ¶ 11.) Plaintiffs refer to the five manufacturing sites located in these four states as, respectively, the "Abingdon South Plant," the "Abingdon North Plant," the "Robinson Site," the "Flora Site," and the

3

"Knoxville Site." (*Id.* ¶¶ 17-20.) The environmental conditions at each of those five sites are at issue in the Complaint.

**B.     The Share Purchase Agreement**

The sale of Briggs Plumbing to Ceramicas was effected by a Share Purchase Agreement ("Agreement") dated August 18, 1997. (Agreement pmbl.) The Agreement is governed by New York Law. (*Id.* § 10.6.) The parties to the Agreement were Ceramicas (the "Buyer"), Briggs Holdings (the "Seller"), Briggs Plumbing (the "Company"), and MetLife. (*Id.* pmbl.) Under section 3.20(c) of the Agreement, Briggs Holdings, along with Briggs Plumbing, warranted that except as set forth in a separate disclosure schedule, it did not know of any "past or present actions, activities, circumstances, conditions, events or incidents . . . that could form the basis of any Environmental Claim" against Briggs Plumbing or Briggs Holdings. (*Id.* § 3.20(c).) Under section 8.4 of the Agreement, Briggs Holdings agreed that, under certain circumstances, it would indemnify Briggs Plumbing and Ceramicas for damages arising from "any inaccuracy in any representation or the breach of any warranty . . . contained in or made pursuant to section 3.20." (*Id.* § 8.4.) MetLife, in a separate clause, guaranteed that Briggs Holdings would perform its obligations under the Agreement. (*Id.* § 9.1.)

The Agreement contains a time limit for bringing indemnification actions that are based on the representations and warranties in section 3.20. Under the Agreement, these actions must be brought prior to sixty days after the expiration of the applicable statute of

4

limitations.[1]  As set forth in further detail in Section II, the applicable statue of limitations here is six years.

## C.   The Filing of Plaintiffs' Complaint Against MetLife

On June 4, 2008, nearly eleven years after execution of the Agreement, Plaintiffs filed suit against MetLife. (Compl. at 1.)  Plaintiffs have brought a claim for contractual indemnification, as well as claims for cost recovery and contribution under CERCLA.

### 1.   The Indemnification Claim

Plaintiffs' claim for indemnification is based on the allegation that the warranty in section 3.20(c) of the Agreement was inaccurate when given. (*See* Compl. ¶¶ 12, 24-26.) Plaintiffs state that since the sale of Briggs Plumbing to Ceramicas, state and federal environmental agencies have "taken action" against Briggs Plumbing "with respect to certain of" the five properties identified in the Complaint "because pollutants or hazardous substances are present on and have been released from those properties." (*Id.* ¶ 12.)  Plaintiffs further state that "[t]he presence or release of environmental substances that gave rise to the governmental agencies' actions were not . . . disclosed in Disclosure Schedule 3.20." (*Id.*)  Plaintiffs therefore conclude that Briggs Holdings is required to indemnify them "with respect to the actions the agencies have taken." (*Id.*)  Moreover, Plaintiffs assert that "[s]ince Briggs Holdings no longer exists," MetLife is required "to fulfill Briggs Holdings' obligations." (*Id.* ¶ *13*)

---

[1] Specifically, section 8.4(e) provides that "[n]o action, claim or set off for Damages subject to indemnification under this Section 8.4 shall be brought or made . . . (ii) with respect to claims for Damages resulting from a breach of any representation or warranty, after the date on which such representation or warranty shall terminate pursuant to section 8.3." (Agreement § 8.4(e).)  Section 8.3, in turn, provides that the representations and warranties in section 3.20 shall terminate "sixty (60) days after expiration of the applicable statute of limitations." (*Id.* § 8.3.)  The Agreement thus bars claims for indemnification based on a breach of section 3.20 if such claims are brought more than sixty days after the statute of limitations for the alleged breach has expired.

Nowhere in the Complaint do Plaintiffs address, or even take note of, the
Agreement's time limit on the initiation of indemnification actions that are based on the
representations and warranties in section 3.20.

      2.    The CERCLA Claims

Plaintiffs also bring claims against MetLife pursuant to CERCLA (*id.* ¶¶ 87-91),
which governs the remediation of sites contaminated with hazardous substances. *See* 42
U.S.C. §§ 9601-9675. CERCLA creates liability on the part of four classes of parties,
known as "potentially responsible parties" ("PRPs"): (1) past and present owners of a
facility where hazardous substances have been deposited, stored, disposed of, placed, or
otherwise come to be located; (2) past and present operators of such a facility; (3)
generators who arranged for disposal of hazardous substances at a facility; and (4)
transporters of hazardous substances to a facility. *Id.* § 9607(a)(1)-(4). Section 107(a) of
CERCLA contains a mechanism for private parties to recover, from PRPs, "necessary
costs of response incurred . . . consistent with the national contingency plan." *Id.* §
9607(a)(4)(B). Section 113(f), in turn, permits private parties to seek contribution from
PRPs either: (1) during or following a civil action under section 106 or section 107(a); or
(2) after settling their liability with the government. *Id.* §§ 9613(f)(1) & 9613(f)(3)(B).

Plaintiffs assert CERCLA claims against MetLife under both sections 107 and
113 based on alleged contamination at the Abingdon South Plant, the Abingdon North
Plant, the Robinson Site, the Flora Site, and the Knoxville Site. (Compl. ¶ 91.) Plaintiffs
do not, however, allege a basis for their section 113 claim, *i.e.*, they do not state that they
have either: (1) been sued under section 106 or section 107(a); or (2) settled their
liability with the government.

With respect to Plaintiffs' section 107 claim, the Complaint contains only three allegations that could be deemed relevant to the contention that MetLife was a PRP: (1) that "Briggs Holdings was the owner of Briggs Plumbing" (*id.* ¶ 11); (2) that "MetLife, in turn, owned a majority of the issued and outstanding stock of Briggs Holdings" (*id.*); and (3) that MetLife was the "owner and operator of each of the former manufacturing or disposal sites identified" in the Complaint (*id.* ¶ 91). Plaintiffs do not allege that MetLife exercised domination or control over Briggs Holdings or Briggs Plumbing, and they do not allege that MetLife misused the corporate form to commit any kind of wrong. Likewise, Plaintiffs do not allege that MetLife played any kind of role in managing, directing, or conducting operations at any of the five sites at issue, or that MetLife was involved in any operations having to do with any contamination at those sites. Further, for the Abingdon South Plant, the Abingdon North Plant, the Robinson Site, and the Flora Site, Plaintiffs do not identify or quantify their alleged "costs of response," but rather assert only that "[t]he release and threatened release has caused the Plaintiffs to incur response costs that were necessary and consistent with the National Contingency Plan (40 Code of Federal Regulations Part 300)." (*Id.* ¶¶ 31, 41, 54, & 66.) Finally, for the Knoxville Site, Plaintiffs allege no facts showing that their claim has been timely filed.

## ARGUMENT

## THE COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT IN ITS ENTIRETY

### I.    Standard of Review

"Where a plaintiff does not sufficiently allege a claim for relief, the action should be dismissed under Fed. R. Civ. P. 12(b)(6)." *Status Int'l S.A. v. M&D Maritime Ltd.,*

7

994 F. Supp. 182, 184 (S.D.N.Y. 1998) (citations omitted). A court deciding a motion under Rule 12(b)(6) "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the non-movant's favor." *Id.* at 185. However, a "'complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'" *Id.* (quoting *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996)); *see also Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss") (quotations, citations, and brackets omitted). Moreover, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir. 1989); *see also Fezzani v. Bear, Stearns & Co., Inc.,* 384 F. Supp. 2d 618, 630 (S.D.N.Y. 2004) ("[I]t is proper to dismiss claims when it is apparent from the complaint and documents referenced therein that they are barred by the applicable statute of limitations.") (citation omitted). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Ghartey,* 869 F.2d at 162 (citations omitted).

## II.    Plaintiffs' Indemnification Claim Should Be Dismissed

### A.    Plaintiffs' Indemnification Claim Is Time-Barred

Plaintiffs' indemnification claim is nearly five years too late. This claim is based on the allegation that Briggs Holdings made an inaccurate warranty in section 3.20 of the Agreement, thereby breaching that clause. (*See* Compl. ¶¶ 12, 24-26.) But the Agreement specifically prohibits Plaintiffs from seeking indemnification for a breach of section 3.20 more than sixty days after the statute of limitations for the alleged breach has

8

expired. (Agreement §§ 8.3 & 8.4(e).) Under New York law, the statute of limitations
for a breach of warranty is six years; thus, the time for a claim of breach under section
3.20 began to run on August 18, 1997. Accordingly, Plaintiffs' indemnification claim is
time-barred and should be dismissed.

        1.     *New York Law Bars Plaintiffs' Claim*

The Agreement is governed by New York law, as the Agreement expressly states
that "[t]his Agreement shall be governed by and construed in accordance with the laws of
the State of New York, regardless of the laws that might otherwise govern under
applicable principles of conflicts of laws thereof." (*Id.* § 10.6.) New York provides for a
six-year statute of limitations for breach of contract actions. N.Y. C.P.L.R. 213(2)
(McKinney 2008). Moreover, in New York, "a cause of action for breach of contract
accrues and the statute of limitations commences when the contract is breached." *T&N
PLC v. Fred S. James & Co. of New York, Inc.*, 29 F.3d 57, 59 (2d Cir. 1994). "[T]he
[New York] Court of Appeals has made clear that neither knowledge of the breach nor
cognizable damages are required to start the statute of limitations running upon breach."
*Id.* at 60; *see also Craig v. Bank of New York*, 169 F. Supp. 2d 202, 207 (S.D.N.Y. 2001)
("In New York it is well established that claims accrue upon breach, not when an alleged
breach is discovered.") (citations omitted).

An action for breach of section 3.20 is an action for breach of contract. *See, e.g.,
ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (applying
New York's six-year statute of limitations for breach of contract to alleged breach of
promise in land-sale contract); *J.A.O. Acquisition Corp. v. Stavitsky*, 745 N.Y.S.2d 634,
641 (N.Y. Sup. Ct. 2001) (holding that claims for breach of stock purchase agreement's
covenants were "plainly governed by the six-year breach of contract statute of

9

limitations"). As such, the statute of limitations on a breach of section 3.20 began to run on the date the warranty in this section was allegedly breached. In section 3.20(c), Briggs Holdings (and, Plaintiff, Briggs Plumbing) warranted that except as set forth in the disclosure schedule, it did not know of any "past or present actions, activities, circumstances, conditions, events or incidents . . . that could form the basis of any Environmental Claim" against Plaintiffs. (Agreement § 3.20(c).) Plaintiffs assert that this warranty was inaccurate, resulting in a breach of section 3.20. (*See* Compl. ¶¶ 12, 24-26.) If such a breach occurred, it would have had to occur on August 18, 1997, the date the Agreement was executed and the warranty was made. *See, e.g.*, *ABB Indus. Sys.*, 120 F.3d at 360 (holding that breach of promise, made in land-sale contract, that site was in compliance with all environmental laws occurred, if at all, on the day the contract was executed). The statute of limitations began to run from that date, regardless of when the alleged breach was, or should have been, discovered. *See id.; see also T&N PLC*, 29 F.3d at 60.

Having begun to run on August 18, 1997, the statute of limitations expired six years later, on or about August 18, 2003. *See* N.Y. C.P.L.R. 213(2). As a result, to pursue any claim for indemnification based on this alleged breach, Plaintiffs would have had to file their claim no later than sixty days after August 18, 2003, which is October 17, 2003. (*See* Agreement §§ 8.3 & 8.4(e).) Plaintiffs, however, commenced this lawsuit on June 4, 2008, well past that deadline. As Plaintiffs' indemnification claim is time-barred, it should be dismissed.

2.    *The Federally Required Commencement Date Does Not Apply*

Nor can Plaintiffs' indemnification claim be saved by the "federally required commencement date" ("FRCD"), a statute of limitations provision relating to claims that

10

– unlike here – are grounded in tort rather than in contract. The FRCD is contained in 42

U.S.C. § 9658, which was enacted by Congress in 1986 as section 309 of CERCLA.

Section 9658 provides a standard for determining the accrual dates of state law toxic tort

claims for "personal injury" and "property damages" due to exposure to hazardous

substances. It provides, in pertinent part, as follows:

> In the case of any action brought under State law for personal injury, or
> property damages, which are caused or contributed to by exposure to any
> hazardous substance, or pollutant or contaminant, released into the
> environment from a facility, if the applicable limitations period for such
> action (as specified in the State statute of limitations or under common
> law) provides a commencement date which is earlier than the federally
> required commencement date, such period shall commence at the federally
> required commencement date in lieu of the date specified in such State
> statute.

42 U.S.C. § 9658(a)(1). The FRCD is defined as "the date the plaintiff knew (or

reasonably should have known) that the personal injury or property damages . . . were

caused or contributed to by the hazardous substance or pollutant or contaminant

concerned." 42 U.S.C. § 9658(b)(4)(A).

Were the FRCD to apply to Plaintiffs' indemnification claim, then the alleged

breach of contract, on which Plaintiffs' claim is based, would still be measured by a six-

year statute of limitations. *See* 42 U.S.C. § 9658(a)(1)-(2); *see also* N.Y. C.P.L.R. 213(2)

(setting forth six-year statute of limitations under New York law). However, the six-year

statute of limitations would not have started to run until the date that Plaintiffs "knew (or

reasonably should have known)" that the alleged contamination had caused personal

injury or property damages.

The FRCD, however, cannot be applied to Plaintiffs' indemnification claim.

Plaintiffs seek relief for an allegedly inaccurate contract warranty, which would have

11

constituted a breach of contract. But the FRCD, by its terms, only covers claims for
"personal injury" or "property damages," not claims for breach of contract *See* 42 U.S.C.
§ 9658(a)(1). New York considers "injury to property," "personal injury," and "breach of
contract" to be three distinct types of claims. Specifically, New York defines "injury to
property" as "an actionable act, whereby the estate of another is lessened, *other than a
personal injury, or the breach of a contract*." N.Y. GEN. CONSTR. LAW § 25-b
(McKinney 2008) (emphasis added). Because claims for breaches of contract are neither
claims for injury to property nor claims for personal injury, they do not fall within the
FRCD's scope.

    The Northern District of New York has explicitly so held. In *Wagar v. BASF
Corp.*, No. 88-CV-90, 1990 WL 124069 (N.D.N.Y. Aug. 24, 1990), the district court
analyzed the applicability of the FRCD to claims for tort and breach of warranty. Four of
the plaintiffs, who were tannery workers afflicted with testicular cancer, had alleged that
their cancer was caused by a chemical found in dyes used in the tanning process. *Id.* at
*1. The court noted that for the plaintiffs to get the benefit of the FRCD, which would
delay the accrual of their state law claims, the claims had to be for either personal injury
or property damage. *Id.* at *2. The court stated that there was "no dispute" that the
claims for negligence and strict liability "are personal injury claims." *Id.* In contrast, the
court concluded that the "plaintiffs' breach of warranty claim does not fit within the
personal injury or property damages language of the statute and is not saved by § 9658."[2]
*Id.* at 2 n.2. As a result, the court dismissed the breach of warranty claim as time-barred.
*Id.*; *see also Hanley v. Dow Chem. Co.*, No. 96CV0483, 1999 WL 33603133, at *6-*8

---

[2] A claim for breach of contract plainly meets the same fate. "New York courts have interpreted claims for
breach of warranty as breach of contract actions within the meaning of GCL [General Construction Law] §
25-b." *Chase Manhattan Bank, N.A. v. T&N plc*, 905 F. Supp. 107, 114 (S.D.N.Y. 1995).

12

(N.D.N.Y. Mar. 3, 1999) (conducting FRCD analysis on tort claims but not on breach of warranty claim).

Moreover, in a directly analogous context, courts in the Southern District have held that time-barred breach of warranty claims are not claims for "injury to property" and could not be revived by the Toxic Tort Revival Act. *See Chase*, 905 F. Supp. at 116; *Port Auth. of New York & New Jersey v. Allied Corp.*, 914 F. Supp. 960, 963 (S.D.N.Y. 1995). The Toxic Tort Revival Act revived, for one year from July 30, 1986, time-barred actions for "personal injury," "injury to property," or "death" caused by the latent effects of exposure to asbestos. *See Chase*, 905 F. Supp. at 113-14; *Allied Corp.*, 914 F. Supp. at 963. In *Chase*, Judge Koeltl reasoned that since the plaintiff's warranty claims were neither personal injury claims nor claims for death, plaintiff could not prevail unless the claims were included within the term "injury to property." *Chase*, 905 F. Supp. at 113-14. Citing General Construction Law section 25-b, the court observed that New York law specifically excludes breaches of contract from the term "injury to property," and that New York courts have interpreted claims for breach of warranty as breach of contract actions. *Id.* at 114-15. Moreover, the court rejected plaintiff's contention that its particular breach of warranty claims fell within the meaning of "injury to property" because it sought consequential property damages. *Id.* at 116. The court observed that "[t]his argument has already been rejected by the New York courts which have found breach of warranty claims to be breach of contract claims even if consequential damages are sought." *Id.*

Judge Koeltl's analysis in *Chase* applies equally to Plaintiffs' indemnification claim here. The FRCD only governs claims for personal injury and property damages.

13

Plaintiffs do not allege that they have suffered any personal injury; accordingly, the

FRCD can only revive Plaintiffs' claim if it is a claim for "property damages." But

Plaintiffs' indemnification claim is based on the contention that section 3.20 of the

Agreement was breached. That contention is a claim for breach of contract, not a claim

for property damages. *See* N.Y. GEN. CONSTR. LAW § 25-b. Moreover, Plaintiffs cannot

transform a breach of contract claim into a claim for property damages by asserting that

consequential property damages flowed from the breach. *See Chase*, 905 F. Supp. at 116.

The FRCD is thus inapplicable here, and Plaintiffs' indemnification claim should be

dismissed.

    B.    In the Alternative, Plaintiffs' Indemnification Claim Is Time-Barred
        As to the Robinson, Flora, and Knoxville Sites

    Even if the FRCD governed this case, which it does not, Plaintiffs' indemnification

claim would still be time-barred as to three of the five sites identified in the Complaint. As

discussed above, under the FRCD, the alleged breach of contract would be measured by

New York's six-year statute of limitations. *See* 42 U.S.C. § 9658(a)(1)-(2); *see also* N.Y.

C.P.L.R. 213(2). That six-year statute of limitations would have started to run on the date

that Plaintiffs "knew (or reasonably should have known)" that the alleged contamination

had caused personal injury or property damages. *See* 42 U.S.C. § 9658(b)(4)(A).

    From Plaintiffs' own allegations, it is clear that they have known (or reasonably

should have known) about purported contamination at three of the sites at issue for at

least the past six years, if not longer.[3] *First*, with respect to the Robinson Site, Plaintiffs

allege that "[a]n IEPA inspection report, dated December 30, 1992, identified existing

site conditions violating applicable regulations in addition to past incidents of spills or

---

[3] Indeed, as the operator of all five sites at all relevant times, Plaintiff Briggs Plumbing was in a position to know about any environmental releases that occurred.

14

other releases of CERCLA hazardous substances at and from the facility." (Compl. ¶ 47.) They further allege that the IEPA issued a February 4, 2000 Violation Notice "alleging that wastewater treatment sludge generated during the porcelain manufacturing processes was stored and/or disposed of at the Robinson Site in violation of applicable solid waste regulations." (*Id.* ¶ 48.) *Second,* with respect to the Flora Site, Plaintiffs state that "[i]n 2002, an environmental consulting firm was retained to conduct a Phase II Environmental Site Assessment to evaluate environmental conditions." (*Id.* ¶ 60.) According to Plaintiffs, the Phase II Site Assessment uncovered "elevated concentrations of nickel and chromium . . . in groundwater beneath the facility" and identified "elevated levels of total petroleum hydrocarbons ("TPH") in soils in the immediate vicinity of an underground storage tank ("UST")." (*Id.* ¶¶ 60-61.) Plaintiffs assert that both "the release of nickel and chromium contamination to groundwater" and "[t]he release of petroleum compounds from the former UST" were "reported to the IDEM on February 15, 2002." (*Id.*) *Third,* with respect to the Knoxville Site, Plaintiffs complain of environmental contamination from an on-site landfill; however, they reference Notices of Noncompliance regarding that landfill dating back to February 25, 1993. (*Id.* ¶ 72.) The most recent Notice of Noncompliance they cite is dated March 5, 1997. (*Id.* ¶ 75.)

Thus, even under the FRCD, the statute of limitations regarding the Robinson Site, the Flora Site, and the Knoxville Site began to run at least six years ago, and more than sixty days have passed since it expired. (*See* Agreement §§ 8.3 & 8.4(e).) Because Plaintiffs did not file the Complaint until June 4, 2008, the FRCD would bar their indemnification claim as follows: (1) Plaintiffs would be more than nine years too late on the Robinson Site, as they have known of alleged contamination there since at least

15

December 30, 1992, and would have had to file their claim by February 28, 1999; (2) Plaintiffs would be over one and a half months too late on the Flora Site, as they have known of alleged contamination there since at least February 15, 2002, and would have had to file their claim by April 15, 2008; and (3) Plaintiffs would be more than nine years too late on the Knoxville Site, as they have known of alleged contamination there since at least February 25, 1993, and would have had to file their claim by April 25, 1999. It is now too late for Plaintiffs to pursue indemnification for any supposed costs incurred in connection with these three sites.

Even if the FRCD applied to this case – which MetLife has demonstrated above in Section II(A) that it does not – then Plaintiffs' indemnification claim would still be time-barred as to the Robinson, Flora, and Knoxville Sites. However, since the FRCD does not apply here, the entire indemnification claim, which is almost five years too late, should be dismissed in its entirety.

## III.    Plaintiffs' CERCLA Claims Should Be Dismissed

Plaintiffs also purport to bring claims under both section 107 and section 113 of CERCLA. Section 113 claims, however, are claims for contribution, which may only be brought by persons who have either been sued under CERCLA or settled their liability with the government. Plaintiffs allege neither and are therefore ineligible to assert a section 113 claim. Moreover, Plaintiffs' section 107 claim should be dismissed because Plaintiffs have not alleged facts that could support holding MetLife, a parent corporation, liable for environmental hazards at manufacturing sites owned by a subsidiary. Plaintiffs' section 107 claim should also be dismissed because: (1) for four out of the five manufacturing sites identified, Plaintiffs have not adequately pled the incursion of

16

response costs; and (2) for the fifth site, Plaintiffs' claim is time-barred by CERCLA's
statute of limitations.

### A.    Plaintiffs Are Not Eligible to Assert a Section 113 Claim

Section 113 claims can only be pursued by certain types of plaintiffs. As the
Supreme Court has recently observed, sections 107 and 113 of CERCLA provide two
"clearly distinct" remedies and complement each other by providing causes of action to
persons in different procedural circumstances. *United States v. Atl. Research Corp.*, 127
S. Ct. 2331, 2337-38 (2007). Section 107 provides for a right to cost recovery, while
section 113 provides for a right to contribution. *Id.* at 2337. The Second Circuit has
summarized the potential section 107 and section 113 causes of action as follows:
"CERCLA permits cost recovery actions under § 107(a) by the government and certain
private parties against potentially responsible parties; contribution actions under
§ 113(f)(1) for parties who have been sued under § 106 or § 107; and contribution actions
under § 113(f)(3)(B) for parties that have entered an administrative or judicially approved
settlement with the United States or a state." *Schaefer v. Town of Victor*, 457 F.3d 188,
194 (2d Cir. 2006).

Section 113 claims are thus available only to parties who, unlike Plaintiffs, have
either been sued under CERCLA or settled their liability with the government. *See Atl.
Research Corp.*, 127 S.Ct. at 2334 & n.1; *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543
U.S. 157, 160-61 (2004). Persons who do not fit that description may be able to assert
section 107 claims for response costs incurred in voluntarily cleaning up a site. *See Atl.
Research Corp.*, 127 S.Ct. at 2339. Such persons, however, cannot pursue claims under
section 113. *See id.* at 2334 & n.1. Plaintiffs do not allege that they have either been

17

sued under CERCLA or settled any liability with the government. As a result, their
section 113 claim should be dismissed.

      B.     Plaintiffs' Section 107 Claim Fails on Multiple Grounds

      Plaintiffs' section 107 claim should also be dismissed. This claim fails because:
(1) Plaintiffs have failed to allege any facts to support a claim for either derivative or
direct liability; (2) Plaintiffs have failed to allege cognizable response costs for the first
four sites identified in the Complaint; and (3) Plaintiffs' claim regarding the fifth site is
time-barred.

          1.     *Plaintiffs Have Not Stated a Claim Premised on Derivative or*
                 *Direct Liability*

      In *United States v. Bestfoods*, 524 U.S. 51 (1998), the Supreme Court considered
the circumstances under which a parent corporation may be held liable under CERCLA
for contamination at a facility under the control of a subsidiary. The Court discussed two
bases for holding the parent corporation liable: (1) derivative liability for the subsidiary's
actions in operating the facility; and (2) direct liability in its own right as an operator of
the facility. *See Bestfoods*, 524 U.S. at 61-67. The Complaint falls far short of stating a
claim under either of these theories, and therefore Plaintiffs' section 107 claim should be
dismissed in its entirety.[4]

          *a.*     *Derivative Liability*

      "It is a general principle of corporate law deeply 'ingrained in our economic and
legal systems' that a parent corporation (so-called because of control through ownership
of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*, 51
U.S. at 61 (citations omitted). "[N]othing in CERCLA purports to reject this bedrock

---

[4] Were Plaintiffs eligible to assert a section 113 claim, their section 113 claim would be subject to dismissal
for the same reason.

principle, and against this venerable common-law backdrop, the congressional silence is audible." *Id.* at 62. "[W]hen (but only when) the corporate veil may be pierced, may a parent corporation be charged with derivative CERCLA liability for its subsidiary's actions." *Id.* at 63-64.

The "Second Circuit has stated that veil piercing is a narrow exception to the doctrine of limited liability for corporate entities, and that courts should permit veil-piercing only under 'extraordinary circumstances.'" *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 511-12 (S.D.N.Y. 2005) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). Plaintiffs have not alleged any facts that could support the "extraordinary" result of holding MetLife liable for the conduct of Briggs Holdings or Briggs Plumbing.

### *(i).    The Applicable Legal Framework*

As a threshold matter, the Court should apply New York state law to decide whether Plaintiffs have stated a claim against MetLife based on a veil-piercing theory of liability.

The Supreme Court in *Bestfoods* noted but did not decide the question of whether courts should look to state law or federal common law to determine if the corporate veil has been pierced under CERCLA, as the question was not presented in the case. *See Bestfoods*, 524 U.S. at 63 n.9. Nor has the Second Circuit decided that question. *Bestfoods*, however, "clearly admonishe[d] courts to refrain from creating CERCLA-specific rules in the face of applicable long-standing common law principles," which "typically come from state law." *Marsh v. Rosenbloom*, 499 F.3d 165, 182 (2d Cir. 2007). "Although CERCLA is a federal statute for which there is presumably an interest in uniform application, where there is no conflict between federal policy and the

19

application of state law, 'a mere federal interest in uniformity is insufficient to justify

displacing state law in favor of a federal common law rule.'" *New York v. Nat'l Serv.

*Indus., Inc.*, 460 F.3d 201, 208 (2d Cir. 2006) (citation omitted). Moreover, the fact that

a particular state law may be less expansive than federal common law in terms of the

scope of CERCLA liability "is not sufficient to justify adopting a rule of federal common

law." *Marsh*, 499 F.3d at 183.

Here, there is no conflict between New York's veil-piercing law and the goals of

the CERCLA statute, which left untouched the well-settled principle that a parent is not

subject to liability for the conduct of its subsidiary absent circumstances warranting the

piercing of the corporate veil. *See Bestfoods*, 524 U.S. at 61-62. Moreover, New York's

veil-piercing standard, which as discussed below requires proof that the corporate form

was misused for the purpose of committing a fraud or other wrong, is more consonant

than federal common law with the Supreme Court's statement in *Bestfoods* that the veil

may be pierced when "the corporate form would otherwise be misused to accomplish

certain wrongful purposes, most notably fraud, on the shareholder's behalf." [5]  *Id.* at 62.

In any event, any claim in this case based on derivative liability would fail

regardless of whether federal common law or New York law supplies the veil-piercing

standard. Under federal common law, a plaintiff relying on a veil-piercing theory must

allege facts to support either that the party sought to be held liable used its alter ego "to

perpetrate a fraud" or that the party "so dominated and disregarded its alter ego's

---

[5] There is no basis in this case to choose another state's law over the veil-piercing law of New York.
Although Plaintiffs' indemnification claim based on the Agreement is distinct from any claims purportedly
arising against MetLife under CERCLA, the parties' designation of a New York state or federal court as the
forum for resolution of any disputes arising from the Agreement (Agreement § 10.9(c)), and their
designation of New York state law to supply the relevant legal standards for such disputes (*id.* § 10.6), is
consistent with applying New York law to resolve other disputes arising between the parties regarding the
five manufacturing sites referenced in the Complaint.

corporate form that the alter ego was actually carrying on the controlling party's business instead of its own." *Dolco Invs., Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007) (citation, quotations, and brackets omitted). Under New York law, a plaintiff seeking to pierce the corporate veil must allege facts to support *both* of those elements, *i.e.*: (1) that the parent exercised complete domination over the subsidiary with respect to the transaction at issue, and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. *EED Holdings*, 228 F.R.D. at 512.

### (ii). Plaintiffs Do Not Allege Any Fact That Could Support a Claim of Domination by MetLife

As to the first prong of the veil-piercing test, the Complaint does not state a claim against MetLife based upon any purported exercise of domination over Briggs Holdings or Briggs Plumbing. Plaintiffs make no allegations, conclusory or otherwise, to carry their veil-piercing burden.

It is well established that "conclusory allegations of an alter ego are insufficient to survive a motion to dismiss." *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007). In *In re Antitrust Currency Conversion Fee Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003), for example, the "only allegations in the entire [c]omplaint" offered to support plaintiffs' veil-piercing theory were that each of the defendant holding companies "exercised such dominion and control over its subsidiaries . . . that it is liable according to the law for the acts of such subsidiaries under the facts alleged in this [c]omplaint." *Id.* (quotations omitted). The court found that these "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal

21

notice pleading standard." *Id.* The "unadorned invocation of dominion and control," the

court found, "is simply not enough." *Id.*

Here, Plaintiffs do not attempt even an "unadorned invocation" of "dominion and

control." Instead, the Complaint is utterly silent as to any kind of veil-piercing theory.

The sole allegation in the Complaint that relates in any way to the relationship between

parent and subsidiary is Plaintiffs' allegation that MetLife "owned a majority of the

issued and outstanding stock of Briggs Holdings." (Compl. ¶ 11). But "mere ownership

of a controlling number of shares in the subsidiary is 'never' enough on its own to

demonstrate the level of direct intervention necessary for veil piercing." *Sahu v. Union

Carbide Corp.*, No. 04 Civ. 8825 (JFK), 2006 WL 3377577, at \*4 (S.D.N.Y. Nov. 20,

2006) (citation omitted); *see also id.* at \*3 ("veil piercing is a rare exception to the well-

settled American principle of limited liability for individual and corporate shareholders").

In the absence of *any* factual allegation that could support a veil-piercing theory,

any claim by Plaintiffs against MetLife premised upon derivative liability should be

dismissed. *See, e.g., Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)

(finding that "the complaint fails to allege facts" that could support a claim that parent

exercised "domination and control" over subsidiary); *Kalin*, 526 F. Supp. 2d at 403

(granting motion to dismiss, where "[p]laintiff does not plead facts showing that [parent]

dominated [subsidiary] at all"); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01 CIV.

2946, 2002 WL 432390, at \*12 (S.D.N.Y. Mar. 20, 2002) (granting motion to dismiss,

noting that "in order to overcome the 'presumption of separateness' afforded to related

corporations, [party] is required to plead specific facts supporting its claims, not mere

conclusory allegations") (citation omitted); *Status Int'l, S.A. v. M&D Maritime Ltd.*, 994

22

F. Supp. 182, 186 (S.D.N.Y. 1998) (granting motion to dismiss, where plaintiff's

allegation that subsidiary was "wholly owned" by parent was "insufficient to overcome

the presumption of corporate separateness" and the "complaint is devoid of any other

facts supporting [p]laintiff's assertion that [parent] is the alter ego" of its subsidiary);

*Loomcraft Textile and Supply Co. v. Jay Yang Designs, Ltd.*, No. 92 Civ. 1757, 1992 WL

249919, at *2 (S.D.N.Y. Sept. 22, 1992) (denying motion to compel defendant to

arbitrate as alter ego of signatory to arbitration agreement, where "no inference of

domination or interrelatedness, necessary to support veil piercing, arises from [p]laintiff's

pleadings"); *Zinaman v. USTS New York, Inc.*, 798 F. Supp. 128, 132 (S.D.N.Y. 1992)

(granting motion to dismiss, where plaintiff "does not allege that [subsidiary] was

controlled and dominated to such an extent that it had 'no existence of its own'" and

complaint "makes no reference to the factors typically considered in applying the alter

ego theory") (citations omitted).[6]

> *(iii).*   *Plaintiffs Do Not Allege Any Facts That Could*
> *Support a Claim That MetLife Misused the*
> *Corporate Form to Commit a Wrong*

Nor have Plaintiffs met the second prong of the veil-piercing test. Specifically,

Plaintiffs have not alleged a single fact that could support a claim that MetLife misused

the corporate form "*for the purpose* of committing a wrong" that injured Plaintiffs. *See*

---

[6] In considering whether to pierce the corporate veil under either New York or federal common law, courts consider a variety of factors, including: (1) the absence of corporate formalities; (2) inadequate capitalization; (3) whether corporate funds are used for personal purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space; (6) the amount of business discretion of the corporation; (7) whether a parent corporation deals with the subject corporation at arms length; (8) whether parent and subsidiary corporations are treated as independent profit centers; (9) payment of the allegedly dominated corporation's debts by the parent corporation; and (10) whether the corporation had property that was used by the parent as its own. *Wm. Passalacqua Builders, Inc. v. Resnick Developers. S. Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) (applying New York law); *City Nat'l Bank of Florida v. Morgan Stanley DW, Inc.*, No. 05 Civ. 2739 (DLC) (JCF), 2007 WL 927428, at *4 (S.D.N.Y. Mar. 29, 2007) (applying New York law), *report and recommendation adopted in full*, 2007 WL 1425790 (S.D.N.Y. May 15, 2007); *City of New York v. Exxon Corp.*, 112 B.R. 540, 553 (S.D.N.Y. 1990) (listing similar factors under federal common law), *aff'd in part*, 932 F.2d 1020 (2d Cir. 1991).

23

*Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200 (DLC), 2007 WL 2435156, at \*6
(S.D.N.Y. Aug. 29, 2007) (quotations and citation omitted) (emphasis in original).
Indeed, Plaintiffs have not attempted to state such a proposition even in a *conclusory*
way. Once again, the Complaint is completely silent on this point.

In the absence of any factual allegations that could support this second prong of a
derivative liability theory, any claim premised upon such a theory should be dismissed
for failure to state a claim. *See, e.g., EED Holdings*, 228 F.R.D. at 513 (granting motion
to dismiss, where plaintiff's veil-piercing claim "fails to establish that [parent's]
domination of [subsidiary] was the means by which wrong was done" to plaintiff)
(quotations and citation omitted); *Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335,
340 (E.D.N.Y. 2003) (ruling that "[p]laintiff's claim must be dismissed because he fails
to allege that defendant [] used his control of the [corporate defendant] to plaintiff's
detriment"); *Alter v. Bogoricin*, No. 97 Civ. 0662 (MBM), 1997 WL 691332, at \*5
(S.D.N.Y. Nov. 6, 1997) (granting motion to dismiss, where "plaintiff must establish a
relationship between the alleged wrong against him and defendants' alleged abuse of the
corporate form," but plaintiff "has failed to assert facts that would establish such a
relationship in this case"); *Zinaman*, 798 F. Supp. 2d at 132 (granting motion to dismiss,
where even assuming plaintiff "pled the requisite control and domination," which
plaintiff had not, plaintiff "fails to allege that [defendant] used this control and
domination to commit a fraud or legal wrong").

> b.     *Direct Liability*

Plaintiffs' Complaint also fails to state a claim under a direct liability theory,
pursuant to which a corporate parent may be held directly liable for its *own* actions as an
operator of a subsidiary's facility. *See Bestfoods*, 524 U.S. at 65-67.

24

The Supreme Court has made clear that for purposes of establishing CERCLA liability as an operator of a facility, "an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id.* at 66-67. Activities "that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability." *Id.* at 72 (quotations and citation omitted). Moreover, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *Id.* at 69 (quotations and citation omitted). The "critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility." *Id.* at 72.

Moreover, a defendant must have been "actively involved in decisions regarding disposal of hazardous substances or environmental compliance on a frequent, regular or ongoing basis." *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 532 F. Supp. 2d 477, 508 (W.D.N.Y. 2007) (citation omitted); *see also City of New York v. New York Cross Harbor R.R. Terminal Corp.*, No. 98CV7227, 2006 WL 140555, at *13 (E.D.N.Y. Jan. 17, 2006) (noting case law requiring active involvement in "decision-making concerning environmental compliance or hazardous waste disposal on a regular, ongoing basis") (citation omitted).

25

Plaintiffs in this case do not come remotely close to stating a claim against MetLife premised upon direct operator liability with regard to any of the five sites that are the subject of the Complaint. The Complaint is devoid of a *single* factual allegation that MetLife managed, directed, or conducted operations at any of those sites, much less that MetLife managed, directed, or conducted operations "specifically related to *pollution*" at the sites. *See Bestfoods*, 524 U.S. at 66 (emphasis added). To the contrary, all the Complaint alleges is that Plaintiff Briggs Plumbing operated the five sites. (*See* Compl. ¶¶ 17-20.) In the absence of any factual allegations that could support a claim based on direct operator liability, any claim based on such a theory should also be dismissed. *See, e.g., Sensient Colors, Inc. v. Kohnstamm*, 548 F. Supp. 2d 681, 690 (D. Minn. 2008) (granting motion to dismiss CERCLA claim based on operator liability, where plaintiff "failed to allege any [] facts" that "mak[e] plausible the claim that Defendants directed the workings of, managed, or conducted the affairs" at the facility); *City of Waukegan, Illinois v. National Gypsum Co.*, _ F. Supp. 2d _, 2008 WL 2278118, at *6 (N.D. Ill. Apr. 7, 2008) (granting motion to dismiss CERCLA claim based on operator liability, where "[t]here is nothing in [plaintiff's] [] complaint to suggest that the [defendant] engaged in any sort of active management of" the activities "alleged to have caused the releases at issue, or that it otherwise micromanaged the facility") (quotations and citation omitted); *Deby, Inc. v. Cooper Ind.*, No. 99C2464, 2000 WL 263985, at *5 (N.D. Ill. Feb. 29, 2000) (granting motion to dismiss CERCLA claim based on operator liability, where plaintiff "failed to allege that [defendant] directed the operations related to the pollution of the site").

26

Because Plaintiffs have failed to allege any facts that could support a claim against MetLife under either a derivative theory of liability or a direct operator theory of liability, their section 107 claim should be dismissed in its entirety.

> 2. *Plaintiffs' Allegations of Response Costs are Deficient With Respect to the Abingdon South Plant, the Abingdon North Plant, the Robinson Site, and the Flora Site*

To state a claim under section 107(a), a plaintiff must allege, *inter alia*, that the release or threatened release of a hazardous substance has caused the plaintiff to incur response costs that are "consistent with the national contingency plan." 42 U.S.C. §§ 9607(a)(4)(B). Allegations that the plaintiff will incur costs in the future do not suffice. *See, e.g.*, *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 91 (2d Cir. 2000). That is because the statute "envision[s] that before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard." *Id.* (quotation and citation omitted); *see also* 42 U.S.C. § 9613(g)(2) (authorizing suit for recovery of costs pursuant to section 107(a) "at any time *after* such costs have been incurred") (emphasis added).

For the first four sites identified in the Complaint – the Abingdon South Plant, the Abingdon North Plant, the Robinson Site, and the Flora Site – Plaintiffs' response cost allegations are boilerplate and conclusory. For each site, Plaintiffs allege only that "[t]he release and threatened release has caused the Plaintiffs to incur response costs that were necessary and consistent with the National Contingency Plan (40 Code of Federal Regulations Part 300)." (Compl. ¶¶ 31, 41, 54, & 66.) Plaintiffs do not even attempt to identify the types of "response costs" they allegedly incurred or quantify how much they spent. Although Plaintiffs later assert the vague allegation that they "have incurred over $1 million to date with respect to the foregoing problems," they do not state that any of

27

the $1 million consists of response costs that were necessary and consistent with the
national contingency plan. (*See id.* ¶ 82.)

Boilerplate allegations of response costs are insufficient to state a claim under
CERCLA. The Ninth Circuit, for instance, has held that to state a prima facie case, a
plaintiff must allege that it has incurred at least one type of "response cost" cognizable
under CERCLA. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1154 (9th Cir.
1989); *see also Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1475 (D. Col. 1991)
("[T]o withstand a 12(b)(6) motion to dismiss, plaintiffs must identify in their complaint
at least [one] prefiling response cost cognizable under CERCLA."). In so holding, the
*Ascon* court observed that "[t]here has been extensive litigation over which types of
response costs are recoverable in a section 107(a) action." *Ascon Props.*, 866 F.2d at
1154 (citations omitted). The court concluded that "[r]equiring a CERCLA claimant to
plead a cognizable response will assist in the proper processing of these actions." *Id.*

Likewise, the Sixth Circuit has rejected as inadequate the conclusory allegation
that "[r]esponse costs were incurred and will be incurred in a manner consistent with the
National Contingency Plan." *See McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39,
42-43 (6th Cir. 1988). The *McGregor* court stated that it was "not holding the pleader to
an impossibly high standard; we recognize the policies behind rule 8 and the concept of
notice pleading." *Id.* at 43. The court found, nevertheless, that "when a complaint omits
facts that, if they existed, would clearly dominate the case, it seems fair to assume that
those facts do not exist." *Id.*; *accord Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, No. 4:05-
CV-428, 2006 WL 2827168, at *5 (E.D. Tex. Sept. 28, 2006) (dismissing CERCLA

28

claims because plaintiff had failed to allege any factual basis for its conclusory allegation

that it expended response costs consistent with the national contingency plan).

In *Bradley Indus. Park v. Xerox Corp.*, No. 88 Civ. 7574, 1991 WL 20008

(S.D.N.Y. Feb. 4, 1991), Judge Haight concurred with the view of the Sixth and Ninth

Circuits. In that case, Bradley Industrial Park ("Bradley"), a property owner in New

York, had asserted CERCLA claims against several companies in adjoining properties for

subsurface and groundwater contamination emanating from those sites. *Id.* at *1. The

complaint "allege[d] no specifics with respect to Bradley's costs and expenditures, either

incurred to date or contemplated in the future." *Id.* at *2. Rather, the complaint simply

alleged that:

> Bradley has incurred and may continue to incur response costs consistent
> with the National Contingency Plan with respect to Bradley, in order to
> investigate and abate the releases or threatened releases from the Xerox
> and Chromalloy sites of hazardous substances into the environment.

*Id.* Similarly, elsewhere the complaint asserted that:

> Bradley has expended money in responding to the releases and threatened
> releases of hazardous substances from the Xerox site and the Chromalloy
> site. Bradley also faces the likely potential for further future responses
> costs, and other actual and consequential damages.

*Id.* The court read the Sixth Circuit's decision in *McGregor* and the Ninth Circuit's

decision in *Ascon* "to say that simply tracking the broad language of the statute is

insufficient to state a viable § 107(a) claim." *Id.* at *6. Because Bradley had failed to

allege the incursion of any response costs recoverable under CERCLA, the court

dismissed the CERCLA claims. *Id.* at *7.

As *Bradley*, *McGregor*, and *Ascon* make clear, Plaintiffs' boilerplate allegations

regarding response costs are wholly insufficient. Plaintiffs must do more than allege that

29

"[t]he release and threatened release has caused the Plaintiffs to incur response costs that were necessary and consistent with the National Contingency Plan (40 Code of Federal Regulations Part 300)." (Compl. ¶¶ 31, 41, 54, & 66.) This allegation, which does nothing more than "track[] the broad language of the statute," is not enough to state a viable section 107 claim. *See Bradley*, 1991 WL 20008, at *6. Moreover, Plaintiffs' claim is not saved by their vague allegation of having incurred "over $1 million to date with respect to the foregoing problems." (Compl. ¶ 82.) Plaintiffs do not allege that any of the $1 million purportedly incurred are response costs that were necessary and consistent with the national contingency plan. In fact, it seems that the $1 million figure relates to Plaintiffs' claim for indemnification, and not to Plaintiffs' CERCLA claims, as the paragraph appears under a heading entitled "Plaintiff [sic] Have Met The Requirements of § 8.4." Section 8.4 of the Agreement prohibits indemnification for expenses not in excess of $1 million.[7] (Agreement § 8.4(a).)

Accordingly, Plaintiffs' section 107 claim should be also dismissed with respect to the Abingdon South Plant, the Abingdon North Plant, the Robinson Site, and the Flora Site for failure to properly allege response costs.

3.    *Plaintiffs' Claim Regarding the Knoxville Site Is Time-Barred*

Finally, Plaintiffs' section 107 claim regarding the fifth site, the Knoxville Site, is time-barred. Plaintiffs allege that an on-site landfill at the Knoxville Site was closed "to minimize potential for releases of hazardous substances and constituents." (Compl. ¶

---

[7] An expense does not constitute a "response cost" under CERCLA merely because the indemnification provisions of the Agreement may cover it. Reasonable attorneys' fees, for example, may be subject to indemnification under the Agreement. (*See* Agreement § 8.4(a).) But litigation-related attorneys' fees generally do not qualify as "response costs." *See Key Tronic Corp. v. United States*, 511 U.S. 809, 816-19 (1994).

76.) They further allege that "[b]ased on information and belief, the costs of completing

closure were approximately \$300,000 to \$400,000, which were paid by [Ceramicas],"

and they state that Ceramicas is paying "ongoing costs associated with post-closure

maintenance and monitoring of the closed on-site landfill." (*Id.*) Plaintiffs assert,

however, that closure of the landfill began over eleven years ago, "[s]ubsequent to

issuance" of a March 5, 1997 Notice of Noncompliance from the Tennessee DEC. (*Id.* ¶¶

75-76.)

       CERCLA's statute of limitations provision for section 107 claims distinguishes

between "remedial" actions and "removal" actions. Remedial actions are "generally

long-term or permanent containment or disposal programs," whereas removal actions are

"typically short-term cleanup arrangements." *Schaefer*, 457 F.3d at 195 (quotation

omitted). A section 107 claim must be filed: "(A) for a removal action, within 3 years

after completion of the removal action . . . and (B) for a remedial action, within 6 years

after initiation of physical on-site construction of the remedial action, except that, if the

remedial action is initiated within 3 years after the completion of the removal action,

costs incurred in the removal action may be recovered in the cost recovery action brought

under this subparagraph." 42 U.S.C. § 9613(g)(2). In general, then, a plaintiff has three

years after completion of a "removal action" to file suit, and six years after initiation of a

"remedial action" to file suit. "If a remedial action is commenced within three years of

the completion of a removal action, the statute of limitations for removal costs is tolled

and the plaintiff may recover the removal costs at the time he recovers any remedial

costs." *Syms v. Olin Corp.*, 408 F.3d 95, 102 (2d Cir. 2005) (citing 42 U.S.C. §

9613(g)(2)(B)). In those circumstances, though, a plaintiffs' ability to recover for the

31

removal action hinges upon whether the remedial action is filed within the six-year statute of limitations. *See Schaefer*, 457 F.3d at 205 n.21.

Regardless of whether closing the Knoxville landfill was a "removal" or a "remedial" action, the Complaint on its face indicates that Plaintiffs' claim is time-barred. Plaintiffs allege that closure of the on-site landfill was commenced "[s]ubsequent to" the issuance of a March 5, 1997 Notice of Noncompliance from the Tennessee DEC. (Compl. ¶ 76.) If closing the landfill was a "remedial" action, then Plaintiffs' claim expired on or about March 5, 2003, six years after the closing process was initiated. Alternatively, if closing the landfill was a removal action, then Plaintiffs' claim is time-barred if the landfill was closed prior to June 4, 2005 (three years before the Complaint was filed), unless Plaintiffs' maintenance and monitoring activities qualify as "remedial" and began within three years of closure. But even in that scenario, Plaintiffs' claim is still time-barred if the maintenance and monitoring activities were initiated prior to June 4, 2002 (six years before the Complaint was filed). In light of Plaintiffs' admission that the closing process commenced in early 1997, the Complaint is not susceptible to a plausible inference that post-closure maintenance and monitoring did not begin until the middle of 2002. Thus, Plaintiffs' section 107 claim should be dismissed as time-barred with respect to the Knoxville Site. *See, e.g., Bonner v. Guccione*, No. 94 CIV. 7735, 1995 WL 442102, at *2 (S.D.N.Y. Mar. 24, 1995) (dismissing claim on ground that it failed to allege facts that would bring it within the statute of limitations).

Because Plaintiffs' CERCLA claims, for multiple reasons, fail to state a claim upon which relief can be granted, they should be dismissed in their entirety.

32

## CONCLUSION

For all the foregoing reasons, MetLife's motion to dismiss the Complaint should

be granted.

Dated:  New York, New York
       August 11, 2008

                              Respectfully submitted,

                              SPEARS & IMES LLP

By:_____
            Charlita Mays
            Sarah Paul
            Sara L. Shudofsky
            51 Madison Avenue
            New York, NY 10010
            cmays@spearsimes.com
            spaul@spearsimes.com
            sshudofsky@spearsimes.com
            Tel.: (212) 213-6996
            Fax: (212) 213-0849

            *Attorneys for Metropolitan Life*
            *Insurance Company*