```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
CERAMICAS INDUSTRIALES, S.A. and    :
BRIGGS PLUMBING PRODUCTS, INC.      :
                                    :
                    Plaintiffs,     :
            v.                      :    08 Civ. 5114 (BSJ)(DFE)
                                    :    **Opinion & Order**
METROPOLOITAN LIFE INSURANCE COMPANY:
                                    :
                    Defendant.      :
                                    :
------------------------------------X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/11/09

## BACKGROUND[1]

Plaintiff Briggs Plumbing, a Michigan corporation, is engaged in the manufacture of ceramic bathroom products. In 1997, Plaintiff Ceramicas Industriales, S.A. ("Ceramicas"), a Chilean company, purchased Briggs Plumbing Products, Inc. (including its manufacturing facilities in Illinois, Indiana, Tennessee, and Pennsylvania) from Briggs Holdings, Inc., a Delaware corporation. At that time, Defendant Metropolitan Life Insurance Company ("MetLife"), a New York corporation, owned a majority of the issued and outstanding stock of Briggs Holdings.

The sale of Briggs Plumbing to Ceramicas was effected by a Share Purchase Agreement dated August 18, 1997. The parties to

---

[1] The facts described are taken from Plaintiffs' Complaint and are assumed to be true for the purposes of this motion only.

1

the Agreement were Ceramicas (the "Buyer"), Briggs Holdings (the "Seller"), Briggs Plumbing (the "Company"), and MetLife.

Since the sale, state and federal environmental agencies have taken action against Briggs Plumbing with respect to the presence or release of pollutants or hazardous substances from certain of the properties transferred along with Briggs Plumbing in the Agreement.

Under section 3.20(c) of the Agreement, Briggs Holdings, along with Briggs Plumbing, state that

> (c) Except as set forth in Section 3.20 of the Disclosure Schedule, to the Knowledge of Seller and the Company, there are no past or present actions, activities, circumstances, conditions, events or incidents, including, without limitation, the release, emission, discharge or presence, or disposal of any Substance of Concern, that could form the basis of any Environmental Claim against the Company or Seller (or against any person or entity whose liability for any Environmental Claim the Company or Seller has retained or assumed either contractually or by operation of law) that could reasonably be expected to have a Material Adverse Effect. (Compl. Ex. 1 at 26-27).

Section 8.4 of the SPA, entitled "Indemnification," states, in pertinent part:

> (a) From and after the Closing, Seller shall indemnify and hold harmless Buyer and the Company...from and against any liabilities, costs or expenses (including reasonable attorneys' fees), judgments, fines, losses, claims, damages and amounts paid in settlement (collectively, "Damages") arising from or in connection with...(ii) any inaccuracy in any representation or the breach of any warranty of Seller, Met Life or the Company contained in or made pursuant to Section 3.20 [Environmental Matters].

Section 8.4 later continues:

> (e) No action, claim or set off for Damages subject to indemnification under this Section 8.4 shall be brought or made...(ii) with respect to claims for Damages resulting from a breach of any representation or warranty, after the date on which such representation or warranty shall terminate pursuant to Section 8.3...(Compl. Ex. 1 at 48-52).

Section Section 8.3 of the Purchase Agreement, entitled "Survival of Representations, Warranties and Covenants," states, in pertinent part:

> (a)...(ii) [A]ll representations and warranties contained in Sections 3.14 and 3.20 shall survive the Closing and remain in full force and effect until sixty (60) days after expiration of the applicable statute of limitations (including any extensions thereof)...(Compl. Ex. 1 at 48).

The presence or release of the pollutants or hazardous substances giving rise to the governmental agencies' actions were not disclosed in section 3.20 of the Purchase Agreement.

Plaintiffs seek to recover costs incurred as a result of investigating and responding to environmental liabilities, bringing suit against Defendant MetLife to enforce rights allegedly found in these contractual provisions and sections 107 and 113(f)(3) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. 9607 and 9613.

Defendant moves to dismiss. That motion is DENIED in part and GRANTED in part.

**DISCUSSION**

4

I. The Standard for Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss may be granted only where it can be shown beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue, in deciding a 12(b)(6) motion, "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)). It follows that "the office of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assay the weight of the evidence which might be offered in support thereof." Eternity Global Master Fund Ltd. V. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

This Court "accept[s] as true all well-pleaded factual allegations in the Complaint and view[s] them in the light most favorable to Plaintiff[]." See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996). Because the complaint relies on the terms of the Agreement, this Court also considers its relevant language. See Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005). This Court is not limited to

Plaintiffs' description of those terms, but "may look to the agreement itself" in assessing the sufficiency of the complaint. Id.

II. First Claim---Contractual Indemnification

Defendant moves to dismiss Plaintiffs' contractual indemnification claim, arguing that it is time-barred. The parties dispute whether the Agreement was intended to restrict Plaintiffs' ability to bring this claim, and, if so, what time limit the contractual language imposes in the instant matter.

"Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir. 2000). See also RJE Corp. v. Northville Indus. Corp., 329 F.3d 310, 314 (2d Cir. 2003) ("Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.") (internal quotation marks omitted). If a contract is unambiguous, then its proper construction is a question of law. Metro. Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). However, "[w]here the intent of the parties is too ambiguous to be gleaned from the contract alone, the Court should receive evidence that might better clarify that intent."

6

Gitnik v. Home Depot U.S.A., Inc., No. 07 Civ. 1244, 2007 WL 2728358, at *2 (S.D.N.Y. Sept. 18, 2007) (internal quotation marks and citation omitted).

At this time, it is unclear what limitations, if any, the parties intended to impose upon the right of indemnification by linking it to section 8.3 of the Agreement, which states that the representations and warranties concerning environmental liabilities at the sites, "shall survive the Closing and remain in full force and effect until sixty (60) days after expiration of the applicable statute of limitations "

Because the Court finds the contractual language ambiguous, the motion to dismiss Claim One is DENIED.

III. Claim Two---CERCLA

A. CERCLA section 107

"CERCLA ... imposes the costs of the cleanup on those responsible for the contamination." Pennsylvania v. Union Gas Co., 491 U.S. 1, 7 (1989). Despite its broad-ranging coverage, however, CERCLA liability is not limitless when it comes to parent-subsidiary relationships among corporations.

Section 107 of CERCLA extends liability derivatively---to those who "own[]" the polluting site---and directly---to those who "operate[]" the polluting site. U.S. v. Bestfoods, 524 U.S. 51, 64 (U.S.1998). Here, Plaintiffs have failed to allege a

7

basis for finding either form of liability.  With respect to section 107 of CERCLA, therefore, Plaintiffs' Second Cause of Action is DISMISSED with leave to amend.

*i. Derivative Liability*

CERCLA section 107 extends derivative liability to those who "own[]" the polluting site.  However, under that section, a parent corporation may be held derivatively liable for its subsidiary's actions only when the corporate veil may be pierced. Bestfoods, 524 U.S. at 63-64.

In Bestfoods, the Supreme Court declined to resolve the issue of whether "in enforcing CERCLA's indirect liability, courts should borrow state law, or instead apply a federal common law of veil piercing." 524 U.S. at 64.  Plaintiffs contend that federal common law should govern the Court's veil-piercing analysis, but argue that under either federal common law or New York state veil-piercing, a party may allege either 1) that a parent used its alter ego to commit a wrong, or 2) that a corporation dominated and disregarded its subsidiary's corporate form such that it was actually carrying on the subsidiary's business. (Opp'n 8).  Defendant argues for the application of New York state law, which it says requires Plaintiffs to allege that 1) the parent misused the corporate

form and 2) the parent did so for the purpose of committing a wrong. (Reply at 12).

In sum, the parties dispute whether Plaintiffs must allege domination of the subsidiary by its parent as well as wrongfulness, or simply domination. This Court need not resolve that question, as Plaintiffs have failed to plead domination, and therefore have not alleged a basis for piercing the corporate veil under either formulation.

In order to allege domination for purposes of piercing the corporate veil, a party must allege that "the owner exercised complete domination over the corporation with respect to the transaction at issue," MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63 (2d Cir.2001). To proceed under this "alter ego" theory, Plaintiffs must allege that "the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor." In re Vebeliunas, 332 F.3d 85, 91 -92 (2d Cir. 2003); Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano, No 03-cv-0015, 2006 WL 1997628, at *13 (S.D.N.Y. July 18, 2006) (applying New York state law); Status Intern. S.A. v. M & D Maritime Ltd., 994 F.Supp. 182, 186 (S.D.N.Y. 1998) (applying federal common law).

Plaintiffs' Complaint does not include allegations indicating that MetLife dominated Briggs Holdings. Instead, they develop this theory primarily in their Opposition to Defendant's

9

Motion to Dismiss.  There, Plaintiffs argue that "under the Agreement MetLife provided broad guarantees concerning indemnification for liability for a variety of future claims, including environmental claims arising at any of the subject property," and that "MetLife unconditionally and irrevocably guaranteed to Plaintiffs the full and punctual performance of obligations impose under the Agreement." (Opp'n at 11).

This Court takes note of MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58 (2d Cir.2001) and agrees that the payment or guarantee of a corporation's debts should be considered in determining whether to pierce the corporate veil. That consideration, however, is only one of a long list of factors, which also includes:  "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities." MAG Portfolio, 268 F.3d at 63; Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir.1997).

10

Plaintiffs rely solely on bare descriptions of the contractual guarantees included in the Agreement.  Nowhere in the Complaint is the Court provided with information that would lead it to infer that these provisions suggested domination to the point of the subsidiary acting as Met Life's "alter ego" or its "mere instrumentality."  In order to pierce the veil between MetLife and Briggs Holdings and sustain a claim of derivative liability under section 107 of CERCLA, Plaintiffs must provide allegations from which the Court could infer a relationship rising to this level of domination.

Further, Plaintiffs propose a version of federal common law that would not require them to allege that MetLife's domination of Briggs Holdings was put to some wrongful purpose, but then assert that even if they were so required, the Complaint's allegations suffice.  The Court disagrees.  Plaintiffs' allegations are inadequate to support wrongful purpose.

Despite the theory put forward in their Opposition to Defendant's Motion, the Complaint itself fails to include allegations of MetLife's wrongful use of its control over Briggs Holdings.  Plaintiffs argue that the "affirmative misrepresentations" made in the Purchase Agreement are sufficient for a finding of wrong, but do not allege any basis (even one far short of fraud, which Plaintiffs do not attempt to plead) for inferring any impropriety in the Agreement's

11

inclusion of the guarantee provisions or the Environmental Schedule.

Plaintiffs have therefore failed to plead derivative liability under CERCLA section 107.

*ii. Direct Liability*

Plaintiffs allegations further fail to state a claim of direct liability under CERCLA section 107. In addition to derivative liability based on ownership, section 107 also extends direct liability to those who "operated any facility at which such hazardous substances were disposed of." 42 U.S.C.A. § 9607.

The Supreme Court has clarified the meaning of "operated" for purposes of this section, stating that, "an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." Bestfoods, 524 U.S. at 66-67. Plaintiffs must allege, that is, some connection between the parent's control and the facility itself.

The Complaint fails to provide any information concerning what role MetLife may have played in the operation of the sites. The contractual guarantees do not indicate involvement with the facility itself. Nor do the Complaint's general allegations

12

characterizing MetLife and Briggs Holdings as parent and subsidiary suffice. "The question is not whether the parent operates the subsidiary, but rather whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary. Control of the subsidiary, if extensive enough, gives rise to indirect liability under piercing doctrine, not direct liability under the statutory language." Bestfoods, 524 U.S. at 68 (citing Schiavone v. Pearce, 79 F.3d 248, 254 (2d Cir. 1996) ("Any liabilities [the parent] may have as an operator, then, stem directly from its control over the plant.").

Absent such allegations linking MetLife to the operation of the sites, Plaintiffs cannot maintain a claim for direct liability under section 107.

Therefore, with respect to Plaintiffs' theories under CERCLA section 107, the Second Cause of Action is DISMISSED with leave to amend.

B. *Section 113 Claims*

Plaintiffs claims under section 113(f)(3) of CERCLA are premature. That section provides that, "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of

13

such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph." 42 U.S.C.A. § 9613.

According to submissions, Plaintiffs are now engaged in settlement talks with state and federal environmental agencies, but have not yet resolved their liability. Prior to resolution, an action for contribution under section 113(f)(3) is inappropriate.

Further, the statute does not authorize a declaratory judgment to be brought under section 113(f)(3). Section 113(g)(2), which Plaintiffs rely on here, refers to declaratory judgments in "[a]ctions for recovery of costs," not in actions for contribution. Plaintiffs must resolve their liability before any action may be brought under section 113(f)(3).

With respect to section 113 of CERCLA, therefore, Plaintiffs' Second Cause of Action is DISMISSED without prejudice.

## CONCLUSION

For the reasons discussed above, the motion to dismiss the First Cause of Action is DENIED. With respect to section 107 of CERCLA, the Second Cause of Action is DISMISSED with leave to amend within thirty days of the date of this order. With

14

respect to section 113 of CERCLA, the Second Cause of Action is DISMISSED without prejudice.

**SO ORDERED:**

*/s/ Barbara S. Jones*
Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         February 11, 2009